## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN STEPHEN ROUTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-0020-JED-JFJ |
| | ) | |
| LaTANYA HOWARD, | ) | |
| JESSICA HARRIS, | ) | |
| KATIE COLBERT, | ) | |
| STEVE BROWN, and | ) | |
| ERIC KITCH, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>OPINION AND ORDER</u>

Plaintiff John Routt, a state prisoner appearing *pro se* and *in forma pauperis*, commenced this 42 U.S.C. § 1983 action on January 13, 2017, by filing a complaint against five defendants: LaTanya Howard, Jessica Harris, Katie Colbert, Steve Brown, and Eric Kitch (Doc. 1).[1] Routt alleges the defendants violated his civil rights while he was held as a pretrial detainee in the David L. Moss Criminal Justice Center, a facility that serves as the Tulsa County Jail (hereafter, "TCJ"). *See* Doc. 1. Before the Court are three motions: the defendants' motion to dismiss the complaint (Doc. 45), Routt's motion to add a defendant (Doc. 47), and Routt's motion for production of evidence (Doc. 49). For the reasons discussed below, the Court denies Routt's motion to add a defendant, grants the defendants' motion to dismiss the complaint, and declares moot Routt's discovery motion.

---

[1]     In the caption of the complaint, Routt provided titles and last names for each defendant. Doc. 1. The case caption reflects each defendant's name as provided in the defendants' notice of party name correction (Doc. 40).

## I. Procedural background

Routt was booked into the Tulsa County Jail (TCJ) on August 15, 2016. Doc. 44-1 at 1. Routt alleges the defendants and other detention officers violated his civil rights on specific occasions in September, November, and December 2016 while he was being held as a pretrial detainee. Doc. 1. He identifies the following seven claims:

| | |
|---|---|
| Count I: | Denied right to be treated humanly [sic] in violation of the 8th & 14th Amendments |
| Count II: | Was subjected to excessive use of force in violation of 8th & 14th Amendments |
| Count III: | I have been arbitrarily and capriciously punished in violation of the 14th Amendment |
| Count IV: | I have been blanket punished and punished for an item found in a common area contrary to the 8th and 14th Amendments |
| Count V: | I have been subjected to cruel and unusual punishment in violation of the 8th and 14th Amendments |
| Count VI: | Have been subjected to discrimination based on my race contrary to the equal protection clause and the 14th Amendment |
| Count VII: | The grievance process at the Tulsa County Jail is a[n] empty formality in violation of the 1st and 14th Amendment[s] |

Doc. 1 at 3-7. Routt requests the following relief: $250,000 in compensatory damages, $8 million in punitive damages, and an injunction "[t]o correct the violations and an order requir[ing] this order

be posted in the living areas of the inmates." *Id.* at 7.[2]  As directed by the Court, the Tulsa County Sheriff's Office submitted a Special Report (Doc. 44), pursuant to *Martinez v. Aaron*, 570 F.2d 317 (1978).  *See* Docs. 12, 28.

The defendants, collectively, move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Doc. 45.  They contend Routt fails to state any plausible § 1983 claims against any of them in either their individual or official capacities.  *Id.* at 1, 5.  Alternatively, the defendants assert they are each entitled to qualified immunity.  *Id.* at 8.

In response, Routt contends his allegations are sufficient to withstand the motion to dismiss and that the defendants are not entitled to qualified immunity.  Doc. 46 at 1-2, 9.   He further contends that the defendants should be required to submit the video of the excessive-force incident he alleges occurred on November 20, 2016, before the Court considers the motion to dismiss.  *Id.* at 2-3.  Finally, in his response to the motion to dismiss, Routt requests dismissal of two defendants, Katie Colbert and Eric Kitch, and three claims, Counts I, VI, and VII.  *Id.* at 3.  On the same day he filed his response, Routt filed a separate motion to add Detention Officer Dustin Hansford as a defendant.  Doc. 47.

The defendants filed a reply to Routt's response to the motion to dismiss.  Doc. 48.  They object to Routt's request for discovery of the video before this Court rules on the motion to dismiss, pointing out that no scheduling order has been issued and no motion for summary judgment has been filed.  *Id.* at 1-2.  The defendants acknowledge Routt's request to dismiss certain defendants and

---

[2]     To the extent Routt seeks prospective injunctive relief relating to allegedly unconstitutional conditions of confinement at the TCJ, any claims for such relief are moot because Routt has been transferred to a different state institution.  *See* Docs. 1, 36; *Jordan v. Sosa*, 654 F.3d 1012, 1027-31 (10th Cir. 2011) (discussing prisoner transfers and mootness in context of claims for prospective injunctive relief).

claims, but they neither state nor suggest that they oppose those requests. *Id.* at 2. The reply does not mention Routt's separate motion to add Hansford as a defendant, *see id.* at 1-2, and the defendants did not file a separate response to that motion.

Routt also filed a separate motion seeking production of the November 16, 2016, video. Doc. 49. In response to that motion, the defendants reassert that Routt's discovery request is premature and "re-urge" their motion to dismiss. Doc. 50.

## II. Discussion

### A. Routt's requests and motion to amend complaint

Through his requests to dismiss certain defendants and claims and his separate motion to add a defendant, Routt effectively seeks leave to amend his complaint. *See* Docs. 46, 47. Under Fed. R. Civ. P. 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Rule 15(a)'s purpose "is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). Thus, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### 1. Requests to dismiss certain claims and defendants

As further discussed below, the Court provided Routt with an opportunity to amend his complaint but Routt did not avail himself of that opportunity. *See* Docs. 6, 12. However, the Court

finds no good reason to deny Routt's unopposed requests to dismiss Count I (inhumane treatment), Count VI (racial discrimination), and Count VII (illusory grievance process) or to deny his unopposed requests to dismiss defendants Colbert and Kitch. Accordingly, the Court dismisses the complaint without prejudice as to Counts I, VI, and VII and dismisses defendants Katie Colbert and Eric Kitch from this action.

## 2. Motion to add new defendant

The Court finds, however, that the record in this case justifies denial of Routt's unopposed motion to add Detention Officer Dustin Hansford as a defendant. "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Minter*, 451 F.3d at 1205. "But '[i]t is well settled in [the Tenth] [C]ircuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay.'" *Eckert v. Dougherty*, 658 F. App'x 401, 410 (10th Cir. 2016) (unpublished)[3] (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)); *see also State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").

Here, Routt filed his original complaint on January 13, 2017, naming five defendants in the case caption. Doc. 1. In the body of his complaint Routt described two unnamed detention officers who were involved in the civil rights violations alleged in Counts I and II. *Id.* at 4-5. On February 3, 2017, Routt moved to "supplement" his complaint, seeking to add three new defendants and two

---

[3]     The Court cites this decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

new claims. Doc. 5. As relevant to his instant motion to add a defendant, Routt sought to "supplement" Count II of his complaint by adding Hansford "in the place of the description of the male detention officer" who allegedly confronted him in the medical unit and used excessive force against him. *Id.* at 2. By Order filed February 8, 2017, the Court construed Routt's motion to "supplement" as a motion to amend and declared the motion moot. Doc. 6 at 2-3. The Court advised Routt that because the complaint had not been served on the defendants, he could amend his complaint without the Court's permission. *Id.* at 2. The Court gave Routt an opportunity to file an amended complaint on or before March 10, 2017. *Id.* at 3.

On March 10, 2017, the Court received a letter from Routt requesting a copy of the Court's local rules. Doc. 8. Almost one month later, on April 6, 2017, Routt moved for a preliminary injunction, moved to waive service on the five named defendants, and submitted a letter requesting information on whether those five defendants had been served and whether they had filed a response. Docs. 9, 10, 11. By Order filed April 7, 2017, the Court denied Routt's pending motions and directed service on the five named defendants. Doc. 12 at 4-5. In the Order, the Court stated that Routt had been given a March 10, 2017, deadline for filing an amended complaint. *Id.* at 1. The Court further stated that because Routt did not file an amended complaint before that deadline expired, "this matter [would] proceed on the allegations raised in the original complaint." *Id.*

Routt filed the instant motion, again seeking to add Hansford as a defendant, on January 22, 2018. Doc. 47. In support of his motion, Routt alleges he submitted an amended complaint to TCJ officials for mailing on or about February 23, 2017, but for "unknown reasons . . . the amended pleading was not mailed." *Id.* at 1. Routt cites a portion of the Special Report as evidence that on February 21, 2017, he submitted a request to TCJ staff for "copies to file this amended 1983 civil

rights complaint in the federal court." *See id.*; Doc. 44-8 at 83. Even assuming Routt submitted an amended complaint to TCJ staff in February 2017, and the TCJ staff did not mail the amended complaint, Routt fails to offer any explanation as to why he then waited nearly one year to reassert his request to add Hansford as a defendant.

Significantly, Routt had notice as of April 18, 2017, that the Court had not received his amended complaint and that the case would therefore proceed on the claims asserted, and against the five defendants identified, in the original complaint. *See* Doc. 12; Doc. 44-8 at 97.[4] Between April 18, 2017, and January 22, 2018, Routt successfully corresponded with the Court by filing multiple motions (Docs. 19, 20, 23, 24), submitting several letters and notices (Docs. 21, 25, 35, 36), timely responding to the Court's order directing him to provide new service documents for the five named defendants (Docs. 26, 28),[5] and filing a response to the defendants' motion to dismiss the complaint (Doc. 46). Yet, Routt did not reassert his request to add Hansford as a defendant—nor did he notify the Court that he had been hindered in his February 2017 attempt to file an amended complaint—until he filed the instant motion on January 22, 2018.

On this record, the Court finds that Routt (1) knew in early February 2017 that Hansford was involved in the excessive-force incident alleged in Count II of the complaint, (2) knew in mid-April

---

[4]    The Special Report shows that Routt received this Court's April 7, 2017 Order on April 18, 2017, and that he submitted several requests to TCJ staff regarding his failed attempt to file an amended complaint. Doc. 44-8 at 97-98, 100.

[5]    The Court also finds it significant that in attempting to comply with the Court's orders to provide new service documents, Routt sought an order from this Court directing the Tulsa County Sheriff's Office to provide the full names of the five named defendants. Doc. 24. Routt filed that request in August 2017 but did not mention Hansford in that request. *Id.* Nor did he question why the Court requested that he submit new service documents for only the five named defendants, but not for Hansford.

2017 that his attempt to amend the complaint to add Hansford as a defendant was unsuccessful, and (3) waited until late January 2018 to file the instant motion to add Hansford as a defendant. Routt's only explanation for this delay is his assertion that TCJ staff "hindered" his attempt to file an amended complaint in February 2017. Doc. 47. Under the particular facts of this case, the Court finds that explanation inadequate—particularly in light of Routt's proven ability to correspond with the Court between April 2017 and January 2018. *See, e.g., Eckert*, 658 F. App'x at 410; *State Distribs., Inc.*, 738 F.2d at 416. The Court therefore denies Routt's motion to add Hansford as a defendant.

### 3. Conclusion

In sum, the Court grants Routt's request to dismiss Colbert and Kitch from this action, grants Routt's request to dismiss the complaint as to Counts I, VI, and VII, and denies Routt's motion to add Hansford as a defendant.

### B. Defendants' Rule 12(b)(6) motion

The remaining defendants, Howard, Harris and Brown, move to dismiss Routt's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state any plausible § 1983 claims against them in either their official or individual capacities. Doc. 45 at 5-7. Alternatively, the defendants argue that if Routt alleges any plausible § 1983 claims against them, each defendant is entitled to qualified immunity because "[t]he rights outlined by Plaintiff in his Complaint . . . are not clearly established." *Id.* at 1, 8.

### 1. Dismissal standards/qualified immunity

To survive a motion to dismiss for failure to state a § 1983 claim, a plaintiff must plausibly allege the "(1) deprivation of a federally protected right by (2) an actor acting under color of state

law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful in fact, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. In applying these standards, a court must liberally construe a complaint filed by a *pro se* plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, while a *pro se* plaintiff bears "the burden of alleging sufficient facts on which a recognized legal claim could be based," the rule of liberal construction assists with that burden by providing that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

These same dismissal standards apply when one or more defendants in a § 1983 action assert a qualified-immunity defense at the motion-to-dismiss stage. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "[P]ublic officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). The officials are entitled to qualified immunity "if their conduct does not violate clearly established statutory or constitutional rights." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). Thus, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). A plaintiff need not point to "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Because "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,'" the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* (first quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), then quoting *al-Kidd*, 563 U.S. at 742); *see also McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018) ("The clearly established standard . . . requires a high degree of specificity." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018))). *But see Wesby*, 138 S. Ct. at 590 (recognizing that "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004))). Ultimately, if a plaintiff meets his burden to allege a plausible constitutional violation, "[t]he dispositive question is 'whether the violative nature of [the defendants'] *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742).

## 2. Official-capacity claims

The Court agrees with the defendants that Routt fails to state any plausible claims against them in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

(1989)).   In contrast, "[i]ndividual capacity 'suits seek to impose personal liability upon a government official for actions he takes under color of state law.'"  *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Here, Routt identifies specific actions taken by each of defendant, under color of state law, as each performed his or her official duties at the TCJ.  Doc. 1.  Routt then purports to sue the defendants in their official capacities.  *Id.* at 1-3.  However, he does not suggest any of the defendants' actions were representative of an official Tulsa County policy or custom nor does he suggest that any of the defendants carried out those actions as Tulsa County officials with final policy making authority with respect to those actions.  *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (explaining that when a plaintiff brings an official-capacity suit against county officials, the plaintiff is effectively filing suit against the county); *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (stating that to establish liability against county under § 1983, plaintiff must show either "[1] that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or [2] were carried out by an official with final policy making authority with respect to the challenged action").  Thus, the substance of Routt's complaint suggests he intends to sue the defendants as individuals for their "official acts,"—i.e., for acts they took under color of state law, but not in their official capacities.  *See Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990) ("It does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official capacity.").  The Court therefore grants the defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted and dismisses the complaint to the extent it could be construed as asserting any official-capacity claims.

### 3.    Individual-capacity claims

The Court also agrees with the defendants that Routt's individual-capacity claims should be dismissed either for failure to state a claim upon which relief may be granted or on qualified-immunity grounds.[6]

### a.    Count II:  excessive-force claim

In Count II of his complaint, Routt alleges that Sergeant LaTanya Howard and Detention Officer Jessica Harris are both liable for violating his Fourteenth Amendment right to be free from the use of excessive force.  Doc. 1 at 4-5.[7]

A pretrial detainee can state a plausible Fourteenth Amendment excessive-force claim by alleging that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473.  In excessive-force cases "objective reasonableness turns on the 'facts and circumstances of each particular case.'"  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Ultimately, several factors "bear on the reasonableness or unreasonableness of the force used," including, but not limited to:  "the relationship between the need for the use of force and the

---

[6]    The facts relating to Routt's individual-capacity claims are drawn from Routt's complaint and accepted as true.  *See Bell Atl. Corp.*, 550 U.S. at 555, 570.  Some facts are also drawn from the Special Report, but only to the extent those facts do not refute Routt's factual allegations.  *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

[7]    In his complaint Routt identifies his Count II excessive-force claim as arising under the Eighth and Fourteenth Amendments.  Doc. 1 at 3.  The defendants point out in their motion to dismiss that as a pretrial detainee, Routt's right to be free from the excessive use of force is protected by the due process clause of the Fourteenth Amendment.  Doc. 45 at 6.  Routt acknowledges as much in his response and argues his allegations sufficiently state a Fourteenth Amendment claim under the standard set out in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).  Doc. 46 at 4-6.

amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Routt's excessive-force claim is based on events he alleges occurred on November 20, 2016. Doc. 1 at 3-5, 7. On that date, Routt went to the TCJ's medical unit and was seen by Nurse Hale. *Id.* at 3-4. When Nurse Hale questioned Routt why he repeatedly visited the medical unit for the "same sick calls," Routt "got up out of the chair and said "What?-are you denying me medical attention?" *Id.* at 4.[8] Routt alleges "[t]hat is when a[n] Indian detention officer, male jumped up in [his] face and started screaming and hollering at [him]." *Id.* When Routt left the area and entered the hallway, Detention Officer Katie Colbert got "in [his] face screaming and hollering." *Id.*

Routt also encountered "another male detention officer" before leaving the medical unit. Doc. 1 at 4. As Colbert continued "hollering and screaming" at Routt, the male detention officer told him to leave the medical unit. *Id.* Routt left, walking on "the right side of the hallway." *Id.* The male detention officer then "grabbed [Routt's] left arm put [it] behind his back and slam[med] [him] in the wall." *Id.* The male detention officer briefly let go, then "grabbed [Routt's] left arm and hand and slammed [him] into the wall again" before releasing him. *Id.* Routt walked down the hallway toward the operations desk and the J-Pod hallway, where he saw Sergeant LaTanya Howard. *Id.* According to Routt, Howard "witnessed everything . . . or at least had to have." *Id.*

---

[8]     Nurse Hale's notes from the medical visit state that Routt "became aggressive" and was "yelling and screaming at" her. Doc. 44-4 at 90-91. These notes appear consistent with Routt's statement that he "got up out of the chair" and pointedly accused Nurse Hale of denying him medical treatment. Doc. 1 at 4.

When Routt stopped to talk to Howard, the male detention officer "proceeded to grab [his] left arm," "twist[ed] it behind [his] back in an awkward position," and "place[d] force on [his] hand and wrist." Doc. 1 at 4-5. At that point, Detention Officer Jessica Harris "came up and grabbed [Routt's] right arm." *Id.* at 5. The male detention officer and Harris "proceeded to push [Routt] in this awkward position down [the] medical hallway to the operations desk, up J-Pod hallway, into J-7 pod and into [his] cell." *Id.* According to Routt, the male detention officer and Harris "slung [Routt] forward into [the] cell hurting [his] neck, back, shoulder and throat." *Id.* Routt spent the next 45 minutes to an hour requesting medical attention from Detention Officer Veter. *Id.* Veter declined his requests, stating, "Sgt. Howard said no because she saw the hold [Routt] was placed in." *Id.*

From these facts, Routt appears to allege two discrete uses of excessive force. First, Routt claims the male detention officer used excessive force against him in the medical unit hallway by twice grabbing his arm and twice slamming him into the wall. Doc. 1 at 4. Even assuming, without deciding, that the male detention officer's actions constituted the use of excessive force, Routt fails to plausibly allege that either Howard or Harris would be liable for this use of force. Routt correctly argues that detention officers could be liable if they fail to intervene to prevent another detention officer's use of excessive force. Doc. 46 at 5-6; *see, e.g.*, *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (explaining that "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983" (quoting *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). However, Routt's allegation that Howard "witnessed . . . or at least had to have" witnessed the male detention officer's actions in the medical unit hallway, is too speculative to "nudge [Routt's] claim[] across the line from conceivable to

14

plausible." *Bell Atl. Corp.*, 550 U.S. at 555, 570. And nothing in the complaint suggests Harris either witnessed or had any involvement in this first excessive-force incident. Doc. 1 at 4-5. Thus, to the extent Routt relies on this first incident, he fails to state a plausible Fourteenth Amendment claim against either Howard or Harris.

Second, Routt claims Harris used excessive force when she grabbed Routt's right arm, placed it behind his back, assisted the male detention officer in escorting Routt to his jail cell, and "slung" Routt into the cell with enough force to "hurt[] his neck, back, shoulder and throat." Doc. 1 at 5. Because nothing in the complaint suggests that Routt was acting aggressively at that point or otherwise resisting the officers after they placed him in an escort hold, Routt's allegations may be sufficient to state a plausible claim that Harris violated his Fourteenth Amendment right to be free from the use of excessive force. *See Kingsley*, 135 S. Ct. at 2473. Nonetheless, Routt fails to cite any "existing precedent plac[ing] the conclusion that [Harris] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix*, 136 S. Ct. at 309 (quoting *al-Kidd*, 563 U.S. at 741). To the extent Routt relies on *Kingsley*'s general proposition that any use of force against a pretrial detainee must be objectively reasonable under the circumstances, that reliance is misplaced. *See Mullenix*, 136 S. Ct. at 308 (emphasizing that the clearly-established inquiry in qualified-immunity cases "must be undertaken in light of the specific context of the case, not as a broad general proposition" (quoting *Brosseau*, 543 U.S. at 198 (2004))). In *Mullenix*, the Supreme Court reiterated that "[s]uch specificity is especially important in the Fourth Amendment context, where the [Supreme Court] has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 308 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). In light of *Kingsley*'s

adoption of the objective-reasonableness standard for Fourteenth Amendment excessive-force claims

asserted by pretrial detainees, *see* 135 S. Ct. at 2473, *Mullenix*'s specificity requirement has equal

force in the Fourteenth Amendment excessive-force context. And, because Routt fails to cite any

existing precedent that "'squarely governs' the facts here," *see Mullenix*, 136 S. Ct. at 310, the Court

finds that Harris is entitled to qualified immunity as to Count II.

As to Howard's liability for the second excessive-force incident, Routt again appears to rest

his claim on the theory that she failed to intervene. Doc. 1 at 3-5; Doc. 46 at 5. Routt's factual

allegations, accepted as true, show that Howard saw the male detention officer and Harris place

Routt in an escort hold and lead him away from the operations desk. *See* Doc. 1 at 4-5 (alleging

Routt was speaking to Howard when detention officers placed him in escort hold; alleging Howard

"saw the hold [Routt] was placed in"). However, nothing in the complaint suggests Howard also

witnessed the male detention officer and Harris push Routt into his jail cell with enough force to

cause his alleged injuries. *Id.* At most then, Routt seeks to impose liability on Howard for failing

to intervene when she witnessed two other detention officers place Routt in what appears, even from

Routt's allegations, to be a routine escort hold.[9] Thus, even accepting Routt's factual allegations

---

[9]     Routt also appears to assert that Howard might be liable for both alleged excessive-force incidents in her role as a supervisor. Doc. 1 at 1; Doc. 46 at 5. However, "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quoting *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991)). Thus, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the [alleged] violation." *Id.* Instead, a plaintiff must show that "the defendant-supervisor personally directed the violation or had actual knowledge of the violation" and allowed the violation to continue. *Id.* at 995. As discussed, Routt's allegations do not support that Howard witnessed the first incident or that she witnessed the second incident beyond Routt's placement into an escort hold. Thus, even assuming Harris and the male detention officer used excessive force when they "slung" Routt into his jail cell, Doc. 1 at 5, he fails to plausibly allege Howard would be liable for the second incident either in her role as a supervisor or for failing to intervene.

as true, the Court finds them insufficient to support a plausible claim that Howard violated his Fourteenth Amendment right to be free from the use of excessive force.

Based on the foregoing analysis, the Court grants the defendants' motion to dismiss the complaint and dismisses the complaint as to Count II for failure to state a claim upon which relief may be granted as to Howard and on the basis of qualified immunity as to Harris.

### b.  Counts III, IV, and V: unconstitutional-punishment claims

Routt asserts his three remaining claims against Detention Officer Steve Brown.  Doc. 1 at 5, 7.  In these claims, Routt alleges Brown violated his Eighth and Fourteenth Amendment rights by "arbitrarily and capriciously punishing him," imposing a "blanket" punishment, and subjecting him to "cruel and unusual punishment."  *Id.*

Routt's claims that he was subjected to unconstitutional punishment as a pretrial detainee, appear to primarily invoke the protections of the Fourteenth Amendment's due process clause.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").  But "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537.  To determine whether a jail official may be liable for imposing an unconstitutional punishment, a court must consider two questions.  "First, [the court] must ask whether an 'expressed intent to punish on the part of detention facility officials' exists."  *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (quoting *Bell*, 441 U.S. at 538).  If the answer to that question is no, "a plaintiff may still prove unconstitutional punishment by showing that the restriction [or condition] in question bears no reasonable relationship to any legitimate governmental objective."  *Id.*

Because the government has a legitimate interest in managing facilities where pretrial detainees are detained, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment." *Bell*, 441 U.S. at 540. In *Bell*, the Supreme Court emphasized that "[i]n determining whether restrictions or conditions are reasonably related to the [g]overnment's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed [the Supreme Court's] warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their responses to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" 441 U.S. at 540 n.23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

With these principles in mind, the Court considers whether Routt's factual allegations support any plausible constitutional claims against Brown. First, in Count III, Routt claims Brown "arbitrarily and capriciously punished him" on December 15, 2016, by placing him on lock down for 72 hours on a "hindering" violation without providing him notice or a hearing on the alleged violation. Doc. 1 at 7. The Special Report confirms that on December 15, 2016, Routt was placed on 72-hour lock down after he argued with Brown, called Brown a racist, and tried to take a food tray away from another inmate. Doc. 44-7 at 1-2. Placing a pretrial detainee on a 72-hour lock down for hindering a detention officer in the performance of his duty seems to fall neatly within an action "reasonably related to the institution's interest in maintaining jail security" and "without more, [does not] constitute unconstitutional punishment." *Bell*, 441 U.S. at 540. Moreover, as Routt acknowledges in his response to the motion to dismiss, the TCSO Inmate Handbook instructs

detainees that "violations or offenses [may] be addressed immediately by the pod officer" and without a formal disciplinary hearing. Doc. 46 at 7. Even accepting as true Routt's allegation that he was locked down for 72 hours for "hindering" and without a hearing, Brown's informal resolution of the disciplinary violation does not appear to be an "exaggerated" response and therefore does not support a plausible claim that Routt was unconstitutionally punished. *See Pell*, 417 U.S. at 827. As a result, Routt's allegations in Count III fail to state a plausible Fourteenth Amendment claim against Brown.

Next, in Count IV, Routt claims Brown "blanket punished" him on September 27, 2016, by locking down the entire pod for 72 hours after finding a sharpened toothbrush in a communal shower. Doc. 1 at 5. Again, even accepting these allegations as true, they do not support a plausible claim that Brown violated Routt's Fourteenth Amendment due process rights. Rather, these allegations support a reasonable, non-exaggerated response to the TCJ's legitimate interest in maintaining security and order. *See Bell*, 441 U.S. at 547 ("[W]e have held that even when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.").

Finally, in Count V, Routt claims Brown "subjected [him] to cruel and unusual punishment" by intentionally making it difficult for inmates to sleep. Doc. 1 at 5. Routt broadly alleges that "[e]very night" Brown works from 12:00 a.m. to 8:00 a.m, Brown "yells in the cells during his first count," "pounds on the glass with his keys [as] loud as he can on purpose," "yells across the pod at the trustees[,] and talks throughout his shift." *Id.* Routt alleges these actions "mak[e] it hard to sleep." *Id.* Liberally construed, these allegations appear to challenge Brown's actions as violating

the Eighth Amendment by creating unconstitutional conditions of confinement. "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (internal citation omitted). To state a plausible conditions-of-confinement claim a pretrial detainee must therefore plausibly allege (1) a "sufficiently serious" deprivation and (2) that Brown had a "sufficiently culpable state of mind." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)).

Accepting Routt's allegations as true, the Court finds them insufficient to state a plausible Eighth Amendment claim against Brown. First, Routt broadly alleges Brown commits these same actions "every night," but Routt does not allege long-term exposure to these actions. *See Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) ("An important factor in determining whether the conditions of confinement meet constitutional standards is the length of incarceration."). Second, Routt alleges Brown's actions "mak[e] it hard to sleep," but Routt does not allege he has suffered any personal harms resulting from the alleged sleep disturbances. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that to show deliberate indifference, an inmate must plausibly allege that the prison official "knows of and disregards an excessive risk to inmate health or

safety").[10]  For these reasons, the Court finds Routt's allegations in Count V fail to state a plausible claim against Brown.

## III.    Conclusion

The Court denies Routt's untimely motion to add Dustin Hansford as a defendant.  The Court grants Routt's requests to dismiss Katie Colbert and Eric Kitch as defendants in this action and his requests to dismiss the complaint, without prejudice, as to Counts I, VI, and VII.  The Court also grants the defendants' motion to dismiss the complaint, without prejudice, because it fails to state any official-capacity claims against the remaining defendants, LaTanya Howard, Jessica Harris, and Steve Brown, and fails to state any individual-capacity claims against Howard as to Count II or against Brown as to Counts III, IV, and V.  The Court dismisses the complaint, with prejudice, in part, because Harris is entitled to qualified immunity as to the excessive-force claim asserted against her in Count II.  Based on these rulings, the Court dismisses this action and declares moot Routt's motion for production of evidence.

---

[10]     In his response to the motion to dismiss, Routt asserts that "sleep deprivation is a form of torture," that being deprived of sleep compounds the stress of being in jail, and that intentionally depriving the housing pod of sleep "amounted to the sort of torture that is prohibited by the eight (8th) amendment."  Doc. 46 at 8.  This attempt to strengthen the allegations in his complaint fails for two reasons.  First, because "the sufficiency of a complaint [generally] must rest on its contents alone."  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Second, because the conclusory allegations in the response still fail to allege Routt has been harmed by a lack of sleep.  Moreover, neither of the cases he cites for support, *see* Doc. 46 at 8, discuss conditions of confinement or equate sleep deprivation to torture.  *See Hudson v. McMillian*, 503 U.S. 1 (1992) (considering whether state prisoner who was handcuffed and beaten by prison guards must show serious injury to support Eighth Amendment excessive-force claim); *Wilkerson v. Utah*, 99 U.S. 130, 135 (1879) (concluding Eighth Amendment does not prohibit "punishment of shooting as mode of executing the death penalty for the crime of murder in the first degree").  If anything, these cases suggest that a prison official's actions of "making it hard to sleep," without allegations of harm to the detainee's health or safety, would not support a plausible Eighth Amendment claim.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  Defendants Katie Colbert and Eric Kitch are **dismissed without prejudice** from this action.

2.  The complaint (Doc. 1) is **dismissed without prejudice** as to Counts I, VI, and VII.

3.  Routt's motion to add a defendant (Doc. 47) is **denied**.

4.  The defendants' motion to dismiss (Doc. 45) is **granted**.

5.  The complaint (Doc. 1) is **dismissed without prejudice** for failure to state a claim upon which relief may be granted as to any official-capacity claims asserted against Howard, Harris and Brown, and as to the individual-capacity claims asserted against Howard in Count II and against Brown in Counts III, IV, and V.

6.  The complaint (Doc. 1) is **dismissed with prejudice** on the basis of qualified immunity as to the excessive-force claim asserted against Harris in Count II.

7.  A separate Judgment shall be entered in this case.

ORDERED this 25th day of May, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE